# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| RODOLFO DOMINGUEZ VELAZQUEZ, <br>     Plaintiff, <br><br> v. <br><br> VILLAGE FARMS, L.P., <br>     Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | EP-19-CV-258-PRM |

## <u>MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR STAY AND TO COMPEL ARBITRATION</u>

On this day, the Court considered Defendant Village Farms, L.P.'s [hereinafter "Defendant"] "Motion for Stay and to Compel Arbitration" (ECF No. 5) [hereinafter "Motion"], filed on September 30, 2019; Plaintiff Rodolfo Dominguez Velazquez's [hereinafter "Plaintiff"] "Response in Opposition to Defendant's Motion for Stay and to Compel Arbitration" (ECF No. 7) [hereinafter "Response"], filed on October 7, 2019; Defendant's "Reply to Plaintiff's Response in Opposition to Defendant's Motion for Stay and to Compel Arbitration" (ECF No. 10) [hereinafter "Reply"], filed on October 11, 2019; and Plaintiff's "Surreply in Response to Defendant's Reply to Plaintiff's Response to Defendant's Motion for Stay and to Compel Arbitration" (ECF No. 13) [hereinafter "Surreply"],

filed on October 18, 2019, in the above-captioned cause. After due consideration, the Court is of the opinion that Defendant's Motion should be granted for the reasons stated herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant is an agricultural enterprise that operates a facility for growing vegetables in Monahans, Texas. Not. Removal, Sept. 11, 2019, ECF No. 1, Ex. A, at ¶ 4. It recruits employees in El Paso, Texas, and transports these employees to Monahans for two-week work shifts. *Id.* at ¶ 7, 20. In September 2016, Defendant recruited Plaintiff, a resident of El Paso, to pick tomatoes at the Monahans facility. *Id.* at ¶ 3, 17.

### A. Plaintiff's Injury and Claims

Plaintiff alleges that on or about August 17, 2017, a spider bit him while he was working at the Monahans facility. *Id.* at ¶ 30. Plaintiff experienced dizziness and chills, and reported the spider bite to the Human Resources [hereinafter "HR"] office at Monahans. *Id.* An HR representative provided Plaintiff with Tylenol and advised him to rest. *Id.* at ¶ 31. On or about August 18, 2017, Plaintiff's condition worsened, and his supervisor advised him to stay in his living quarters, a trailer. *Id.* at ¶¶ 32, 33.

On or about August 21, 2017, Plaintiff's health continued to worsen. *Id.* at ¶ 34. Plaintiff alleges that because Defendant provided no additional assistance with his injury, Plaintiff's wife picked Plaintiff up from the Monahans facility and transported him to University Medical Center in El Paso, Texas. *Id.* At University Medical Center, Plaintiff was diagnosed with necrosis, a serious infection resulting from spider or insect venom. *Id.* at ¶ 35. Medical staff amputated Plaintiff's leg in order to save his life. *Id.* Five days after the amputation, Defendant terminated Plaintiff's employment. *Id.* at ¶ 37.

On August 15, 2019, Plaintiff filed his "Original Petition and Jury Demand" in Texas state court. *Id.* at ¶ 1. On account of his "on-the-job injury sustained . . . on or about August 17, 2017," he brings claims against Defendant for negligence, gross negligence, and violations of the Agricultural Worker Protection Act [hereinafter "AWPA"]. *Id.* at ¶¶ 7, 43–51. Plaintiff alleges more than $1,000,000 in damages due to bodily injuries, lost wages, mental anguish, and emotional distress. *Id.* at ¶¶ 52–56.

## B.     The Arbitration Agreement

On September 30, 2019, after removing the above-captioned cause
to federal court, Defendant filed its "Motion for Stay and to Compel
Arbitration." Not. Removal 4; Mot. 1, 3. For the purposes of
establishing a factual record, the Court highlights several contractual
provisions which relate to Defendant's Motion.

First, Defendant maintains an Employee Injury Benefit Plan
outlined in a "Summary Plan Description" [hereinafter "SPD"],
which provides employees with compensation for workplace injuries.
Mot. Ex. C, at 2, 8. The SPD provides that employees "automatically
become a participant in the Plan if [they] are an employee of the
Employer." *Id.* at 8. Among other provisions, the SPD allows Defendant
to:

> amend, modify, or terminate the Plan at any time; provided,
> however, no amendment or termination of the Plan will reduce the
> amount of any benefit then due and payable under the Plan to or
> with respect to you in connection with an Injury occurring prior to
> the date of such amendment or termination.

*Id.* at 21. The SPD also references "an Arbitration Policy attached to the
back of this booklet." *Id.* at 6 (emphasis omitted).

4

The arbitration agreement attached to the SPD is entitled,

"Appendix A Arbitration of Certain Injury-Related Disputes." Mot. Ex.

C, at 26. It requires arbitration of:

> any legal or equitable claim by or with respect to an employee
> for any form of physical or psychological damage, harm or death
> which relates to an accident, occupational disease, or cumulative
> trauma (including, but not limited to, claims of negligence or gross
> negligence or discrimination; claims for . . . violation of any other
> noncriminal federal, state or other governmental common law,
> statute, regulation or ordinance in connection with a job-related
> injury . . . ).

*Id.* The agreement to arbitrate is mutual between employer and

employee, as "[n]either an employee nor an Employer shall be entitled to

a bench or jury trial." *Id.*

Defendant also submits to the Court a "Receipt and Arbitration

Acknowledgment" [hereinafter "Acknowledgment"], allegedly signed by

Plaintiff on September 6, 2016. Mot. Exs. A, B.[1] The

Acknowledgement's "Receipt of Materials" section reads, "I have received

and read (or had the opportunity to read) the Benefits Schedule,

Summary Plan Description (the "SPD") for the Employee Injury Benefit

Plan." Mot. Ex. B. The Acknowledgment's "Arbitration" section reads,

---

[1] Plaintiff only speaks and reads Spanish, rather than English. Resp.
Ex. A, at ¶ 1. Plaintiff executed a Spanish-language version of the
Acknowledgment, and Defendant submitted an English-language
translation. *See* Mot. Exs. A, B.

"this SPD includes a mandatory company policy requiring that certain claims or disputes . . . must be submitted to an arbitrator," and, "I understand that by receiving this SPD and becoming employed with the Company . . . I am accepting and agreeing to comply with these arbitration requirements." Mot. Ex. B.

Finally, the parties submit various affidavits and documents related to authenticating the Acknowledgment and Plaintiff's signature. Miriam Hernandez, the Human Resources Manager at Defendant's facility in Monahans, attests to her knowledge of, and produces, Plaintiff's signed Acknowledgment and a wide range of other documents bearing Plaintiff's name and signature. Hernandez Aff., Oct. 11, 2019, ECF No. 10; Reply Ex. 2. Rebecca Vazquez, the Site Compliance Representative for Defendant at its Monahans facility, attests to her knowledge of a September 6, 2016, employee orientation session, and produces a sign-in sheet from the session bearing Defendant's name and signature. Vazquez Aff., Oct. 11, 2019, ECF No. 10; Reply Ex. 1. She also attests that orientation sessions include a review of the SPD, the arbitration agreement, and the Acknowledgment. Vazquez Aff. On Plaintiff's behalf, Lilian Chavez, a paralegal at the law firm Daniela

Labinoti, P.C., attests to her personal knowledge of, and produces, documents and an identity card signed by Plaintiff. Surreply 7, 9–13.

## II. LEGAL STANDARD

When considering a motion to compel arbitration, courts employ a two-step analysis. "First, a court must 'determine whether the parties agreed to arbitrate the dispute in question.'" *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (quoting *Webb v. Investacorp., Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). Second, a court "must determine 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985)).

The first step of the analysis—whether the parties agreed to arbitrate the dispute in question—consists of two distinct prongs: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* at 418–19 (citing *Webb*, 89 F.3d at 258).

In assessing "whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs

the agreement." *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004). As both parties rely on Texas law in their briefing, the Court will apply Texas law. *Zamora v. Swift Transp. Corp.*, 547 F. Supp. 2d 699, 702 (W.D. Tex. 2008), *aff'd*, 319 F. App'x 333 (5th Cir. 2009).

Courts evaluate whether a dispute falls within the scope of an arbitration agreement "'by applying the federal substantive law of arbitrability.'" *Graves v. BP Am., Inc.*, 568 F.3d 221, 222 (5th Cir. 2009) (quoting *Mitsubishi*, 473 U.S. at 626). "In determining whether the dispute falls within the scope of the arbitration agreement, 'ambiguities . . . [are] resolved in favor of arbitration.'" *Fleetwood*, 280 F.3d at 1073 (quoting *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989)).

## III. ANALYSIS

In order to determine whether Defendant can compel arbitration, the Court considers (1) whether there is a valid arbitration agreement between the parties, and (2) whether Plaintiff's claims fall within the scope of that arbitration agreement. The parties do not raise, and the Court does not consider, external legal constraints that could foreclose

arbitration. Holding that there is a valid arbitration agreement between the parties and that Plaintiff's claims fall within this agreement, the Court concludes that Defendant's Motion should be granted, and the Court will order Plaintiff to submit his claims to binding arbitration.

## A.     There is a Valid Agreement to Arbitrate

As an initial matter, the Court determines that Plaintiff and Defendant entered an agreement to arbitrate pursuant to a larger, underlying contract established by the SPD. Defendant presents admissible, authenticated evidence in order to prove that the arbitration agreement exists, and the Court is of the opinion that the arbitration agreement is not illusory nor lacking consideration. Accordingly, Defendant satisfies the initial requirement for arbitration that there is a valid arbitration agreement between the parties.

### 1.     Construction of the Arbitration Agreement

Applying the "state-law principles governing the formation of contracts," the Court determines that Plaintiff assented to an arbitration agreement with Defendant as part of a larger, underlying contract formed pursuant to the SPD. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006).

A contract requires mutual assent of the parties. Restatement (Second) of Contracts § 17 (1981). Here, the SPD includes a provision that Defendant's employees "automatically become a participant in the Plan if you are an employee of the Employer," representing an offer and a method of acceptance. Mot. Ex. C, at 8. Plaintiff acknowledged that he read or had an opportunity to read these terms and began employment with Defendant, manifesting his assent to the SPD. *See* Restatement (Second) of Contracts § 19 (1981) ("The manifestation of assent may be made . . . by other acts or by failure to act."). Therefore, Plaintiff and Defendant mutually assented to a broad workplace injury agreement pursuant to the SPD.

The parties' agreement pursuant to the SPD incorporates an arbitration agreement by direct reference. "'Under the doctrine of incorporation by reference, where one contract refers to another contract or instrument, the second document may properly constitute part of the original contract.'" *Zamora*, 547 F. Supp. 2d at 702 (quoting *Cappadonna Elec. Mgmt. v. Cameron Cty.*, 180 S.W.3d 364, 371 (Tex. App. 2005)). Here, the SPD provides that there is "an Arbitration Policy attached to the back of this booklet," incorporating the arbitration

agreement by reference. Mot. Ex. C, at 6. Thus, the arbitration agreement constitutes part of the parties' larger, underlying agreement pursuant to the SPD.

Texas courts also emphasize the importance of notice in determining whether an employee has validly accepted the terms of an arbitration agreement. *See Big Bass Towing Co. v. Akin*, 409 S.W.3d 835, 838 (Tex. App. 2013) (requiring an employer to "show the employee received notice of the employer's arbitration policy and accepted it."); *In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2002) (concluding that employee accepted arbitration by receiving notice of agreement and continuing employment). Here, Plaintiff signed the Acknowledgement, which indicates that "by receiving this SPD and becoming employed . . . I am accepting and agreeing to comply with these arbitration requirements." Mot. Ex. B. Accordingly, the Court concludes Plaintiff had sufficient notice of the arbitration agreement, and furthermore specifically accepted the arbitration agreement's terms.

2. Defendant Establishes the Existence of an Arbitration Agreement

Plaintiff argues that Defendant fails to "prove the existence of the arbitration agreement," and denies that he signed the Acknowledgment

11

or received the SPD. Resp. 2, 4. However, after reviewing the evidence produced by the parties, the Court determines that Plaintiff's claims are not credible. Defendant presents admissible, authenticated evidence which clearly establishes that the parties entered a valid agreement to arbitrate.

"The burden of establishing an arbitration agreement's existence is evidentiary and runs with the party seeking to compel arbitration." *Kmart Stores of Texas, LLC v. Ramirez*, 510 S.W.3d 559, 565 (Tex. App. 2016) (quoting *United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 812 (Tex. App. 2014). "Simply attaching a document to a pleading does not make the document admissible as evidence, dispense with proper foundational evidentiary requirements, or relieve a litigant of complying with other admissibility requirements." *Estate of Guerrero*, 465 S.W.3d at 704 (quotations omitted).

Defendant introduces properly authenticated evidence to establish the existence of the parties' arbitration agreement. Miriam Hernandez attests to her personal knowledge of Plaintiff's signed Acknowledgement form in Plaintiff's employment file, which establishes that Plaintiff entered an arbitration agreement pursuant to the SPD. Rebecca

Vazquez attests to her personal participation in a training session for new employees on September 6, 2016, and her knowledge of the sign-in sheet at that training. Her affidavit and evidence further corroborate that Plaintiff signed the Acknowledgment and received notice of the SPD, again indicating the parties entered an arbitration agreement.[2] Both of these individuals present admissible, authenticated evidence based on personal knowledge. *See Big Bass Towing Co.*, 409 S.W.3d at 841 ("Affidavits not based on personal knowledge are not competent evidence"). Accordingly, the Court concludes that Defendant meets its burden of proving the existence of an arbitration agreement between the parties.

Furthermore, Plaintiff introduces insufficient evidence to preclude the Court from granting Defendant's motion, or alternatively, to grant an evidentiary hearing. A party resisting arbitration may "contest[] the [arbitration] agreement's existence and raise[] genuine issues of

---

[2] Plaintiff requests that the Court "strike all evidence raised in Defendant's reply brief," including the affidavits of Ms. Hernandez and Ms. Vazquez. Surreply 2. The Court declines Plaintiff's request because Plaintiff had an adequate opportunity to respond to new evidence in his Surreply. *See Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004) (holding that a court may rely on evidence attached to a reply brief so long as the opposing party has "an adequate opportunity to respond prior to a ruling.").

material fact by presenting affidavits or other such evidence as would generally be admissible in a summary proceeding." *Kmart Stores of Texas, L.L.C.*, 510 S.W.3d at 565 (quotations omitted). Where the resisting party presents a genuine issue of material fact, "the trial court must forego summary disposition and hold an evidentiary hearing." *Id.* However, a genuine issue of material fact requires a party to "bring[] forth more than a scintilla of probative evidence." *Zapata v. The Children's Clinic*, 997 S.W.2d 745, 747 (Tex. App. 1999).

Specifically, Plaintiff claims that Defendant "did not enter into an agreement to arbitrate" because the signature on the Acknowledgement form is not his own. Surreply 2. In support of this argument, he submits examples of his signature to the Court. However, the Court is of the opinion that Plaintiff has not provided more than a "scintilla of probative evidence" that there is a fact issue as to whether Plaintiff signed the Acknowledgment. *Zapata*, 997 S.W.2d at 747. The signatures on the Acknowledgment, in Plaintiff's employment file, and submitted by Plaintiff on legal documents all appear similar. The Court concludes that no reasonable person could differ as to this conclusion. *See Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.

1997) (holding that more than a scintilla of evidence requires "reasonable and fair-minded people to differ in their conclusions."). Accordingly, the Court will not hold an evidentiary hearing or deny Defendant's Motion for failing to provide authenticated evidence of a valid arbitration agreement.

### 3. The Arbitration Agreement Is Not Illusory

Plaintiff also argues that the arbitration agreement between the parties is invalid because it is illusory and lacks consideration. Resp. 6. Plaintiff is correct that Defendant retains the right to unilaterally modify the arbitration agreement, making Defendant's promise to arbitrate illusory. However, Defendant's irrevocable promise to provide benefits to Plaintiff pursuant to the SPD serves as valid consideration for Plaintiff's promise to arbitrate claims. Therefore, the Court is of the opinion that the arbitration agreement is valid and not illusory.

"A valid contract requires consideration or mutuality of obligation." *Zamora*, 547 F. Supp. 2d at 703 (citing *In re C & H News Co.*, 133 S.W.3d 642, 647 (Tex. App. 2003)). "When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation and, thus, there is no contract." *In re C & H News Co.*, 133

S.W.3d at 647 (citing *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 645 (Tex. 1994) (abrogated on other grounds)). "A promise is illusory when it fails to bind the promisor, who retains the option of discontinuing performance." *Id.* (citations omitted).

Illusory promises in standalone arbitration agreements and arbitration agreements included in larger, underlying contracts operate differently. "In the context of stand-alone arbitration agreements, binding promises [to arbitrate] are required on both sides as they are the only consideration rendered to create a contract." *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (citing *J.M. Davidson*, 128 S.W.3d at 228; *Halliburton*, 80 S.W.3d at 569). However, "when an arbitration clause is part of a larger, underlying contract, the remainder of the contract may suffice as consideration for the arbitration clause." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 676 (citing *In re AdvancePCS Health L.P.*, 172 S.W.3d at 607).

Here, Defendant's promise to arbitrate is illusory because Defendant can change or modify the parties' arbitration agreement. The SPD indicates that Defendant may "amend, modify, or terminate the Plan at any time," and the SPD incorporates the arbitration agreement.

16

Mot. Ex. C, at 21. As a result, Defendant may revoke its promise to arbitrate claims contained in the arbitration agreement. It follows that Defendant's promise to arbitrate is illusory,[3] and cannot serve as valid consideration for Plaintiff's mutual promise to arbitrate. *See In re Datamark, Inc.*, 296 S.W.3d 614, 618 (Tex. App. 2009) (holding that a promise to arbitrate was illusory because Defendant "had the ability to modify or terminate the contract at any time without giving prior notice to its employees").

However, the Court is of the opinion that the arbitration agreement is valid because Defendant's irrevocable promise to provide benefits pursuant to the SPD serves as valid consideration for Plaintiff's promise to arbitrate. The case at bar does not concern a standalone arbitration clause, but an arbitration clause incorporated into a larger contract pursuant to the SPD. Defendant also makes an irrevocable,

---

[3] The SPD does not require Defendant to provide notice before modifying the arbitration agreement, which would prevent Defendant's promise to arbitrate from being illusory. *See Halliburton*, 80 S.W.3d at 570 (noting that employer's "termination shall not be effective until 10 days after reasonable notice of termination is given."). Similarly, while the SPD reads that, "[t]his arbitration provision shall remain in effect . . . without regard to . . . voluntary or involuntary termination of an employee's employment with an Employer," Defendant may still revoke the arbitration agreement on other terms. Mot. Ex. C, at 29. Thus, Defendant's promise to arbitrate is illusory notwithstanding this provision.

non-illusory promise to pay an injured employee benefits, because the SPD provides that "no amendment or termination of the Plan will reduce the amount of any benefit then due and payable." Mot. Ex. C, at 21. Like in similar cases, Defendant's irrevocable promise to provide benefits pursuant to the SPD provides sufficient consideration for Plaintiff's promise to arbitrate. *See Mendez v. New Bell Gen. Servs., L.P.*, 727 F. Supp. 2d 585, 594 (W.D. Tex. 2010) (determining that benefits paid to employee served as valid consideration for employee's promise to arbitrate); *see also In re AdvancePCS Health L.P.*, 172 S.W.3d at 607 (determining that use of business services provided adequate consideration for a promise to arbitrate). Accordingly, given that there is valid consideration for Plaintiff's promise to arbitrate, the arbitration agreement between the parties is enforceable and valid.

### B.    Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement

In assessing whether to compel arbitration, the Court must also determine if the dispute in question falls within the scope of the arbitration agreement. Plaintiff concedes, and the Court agrees, that Plaintiff's common law claims fall within the arbitration agreement. Resp. 8. In addition, Plaintiff argues that his statutory AWPA claims do

18

not fall within the agreement. *Id.* at 9. However, after due consideration, the Court determines that Plaintiff's AWPA claims fall within the arbitration agreement because the agreement includes statutory claims, and the relevant statutes here do not bar arbitration.

First, the plain meaning of the arbitration agreement indicates that Plaintiff's AWPA claims are within the agreement's scope. The agreement requires the parties to submit claims to arbitration for violations of "any other noncriminal federal, state or other governmental common law, statute, regulation or ordinance in connection with a job-related injury." Mot. Ex. C, at 21. Plaintiff's AWPA claims plead violations of a federal statute. The claims are also connected with Plaintiff's workplace injury because the basis of Plaintiff's suit is his workplace injury. Even assuming arguendo that the degree of connection between the AWPA claims and Plaintiff's injury is ambiguous, the federal presumption in favor of arbitration weighs towards the Court concluding that the AWPA claims are connected with Plaintiff's injury. *See Fleetwood Enters.*, 280 F.3d at 1073 ("ambiguities . . . [are] resolved in favor of arbitration." (quotations omitted)). Thus,

according to the language of the arbitration agreement, Plaintiff's AWPA claims fall within the agreement's scope.

In addition, Plaintiff's AWPA claims are within the scope of the arbitration agreement because Congress did not exempt AWPA claims from arbitration. Arbitration clauses generally cover statutory claims "'unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (quoting *Mitsubishi*, 473 U.S. at 628). Here, Congress has not used statutory language in AWPA or the FAA to exempt AWPA claims from arbitration. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626 (2018) (holding Congress had overridden the FAA with language such as "[n]o predispute arbitration agreement shall be valid or enforceable"). Therefore, the Court is of the opinion that Plaintiff's AWPA claims fall within the parties' arbitration agreement.

## IV. CONCLUSION

After due consideration, the Court concludes that the parties entered a valid agreement to arbitrate, and Plaintiff's claims fall within the scope of that agreement. In addition, the Court determines there are

no external legal constraints which foreclose arbitration in the case at bar.

Accordingly, **IT IS ORDERED** that Defendant Village Farm L.P.'s "Motion for Stay and to Compel Arbitration" (ECF No. 5) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Rodolfo Dominguez Velazquez **SUBMIT** his claims in this matter to binding arbitration.

**IT IS FURTHER ORDERED** that this case is **STAYED**.

**IT IS FURTHER ORDERED** that the parties shall **NOTIFY** the Court if it becomes appropriate to lift the stay and reinstate the case.

**IT IS FURTHER ORDERED** that all settings in this matter are **VACATED**.

**IT IS FURTHER ORDERED** that all pending motions in this cause, if any, are **DENIED AS MOOT**.

**FINALLY, IT IS ORDERED** that the Clerk shall **ADMINISTRATIVELY CLOSE** this case.

SIGNED this _25_ day of **February, 2020.**

PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE